WHITCROFT (CARROLL v.). See Case No. 2.458.

*WHITE, Ex parte. See In re PIERCE.

---

## Case No. 17,531.

### In re WHITE et al.

[2 Ben. 85; [1] 1 N. B. R. 218 (Quarto. 1).]

District Court, S. D. New York. Jan., 1868.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

---

---

## Case No. 17,532.

### In re WHITE.

[2 N. B. R. 590 (Quarto. 179); 16 Pittsb. Leg. J. 110; 2 Am. Law T. 105; 1 Am. Law T. Rep. Bankr. 136; 1 Chi. Leg. News, 326.] [1]

District Court, D. Massachusetts. 1868.

In bankruptcy.

---

## Case No. 17,533.

### In re WHITE et al.

[18 N. B. R. 107.] [2]

District Court, S. D. New York. June 6, 1878.

BANKRUPTCY—DISCHARGE—REFERENCES—PRACTICE —OBJECTIONS TO DISCHARGE.

1. The bankrupts were members of a firm engaged in the lumber business, with their

---

[1] [Reprinted from 2 N. B. R. 590 (Quarto, 119), by permission. 1 Chi. Leg. News, 326, gives only a partial report.]

[2] [Reprinted by permission.]

principal place of business at A., in this state. They were also members of other firms engaged in the same business in Canada, but in each of such firms there was another partner, at least nominally. The creditors of the Canadian firms having threatened legal proceedings to sequestrate the property of those firms in Canada, transfers of said property were made by way of mortgage to such creditors, in consideration of advances to carry on the business and to secure payment of the debts of the Canadian firms. This course was recommended by some of the principal creditors of the firm in this state, at an informal meeting of the creditors, as the best thing to be done under the circumstances. It appeared that the transfers were made in good faith. *Held* that, under the circumstances, the transfers were not preferences, within the meaning of the act, so as to deprive the bankrupts of their discharge.

2. The adjudication in this case was made in November, 1873. A petition for discharge had been filed in August, 1875. The present petition for discharge was filed in November, 1876. It was objected that the court had no jurisdiction to grant the discharge, on the ground that a prior petition for discharge was still pending and undetermined. *Held*, that the objection was frivolous, that no discharge could have been granted on the prior petition, because not seasonably made, and that the proceedings under it were abandoned when this petition was filed.

3. Whenever an objection to a discharge rests on facts, there must be a specification, in order that the bankrupt may produce evidence, and that there may be a trial of the fact.

[In the matter of Douglas L. White, Samuel W. Barnard. and Alanson S. Page, bankrupts.]

Gleason & Carter, for bankrupt.

J. H. Work, E. R. Robinson, and Burrill, Davidson & Burrill, for trustees and opposing creditors.

CHOATE, District Judge. This is an application for a discharge on the part of Alanson S. Page, one of the bankrupts. The creditor's petition was filed July 24, 1873, against White, Barnard and Page, composing the firm of White & Co., and they were adjudicated bankrupts November 5, 1873. Page's petition for discharge was filed November 14, 1876. The trustees and several creditors filed specifications on which testimony has been taken.

1. The first four specifications are for alleged preferences made by the transfer of property situated in Canada, consisting of very valuable rights to cut timber, lumber mills and logs, and other personal property used in and about the business of the two firms of A. S. Page & Co. and Page, Mixer & Co., which property is alleged by the objecting creditors to have been the property of White & Co., the said firms of A. S. Page & Co. and Page, Mixer & Co. being, it is alleged, merely the firm of White & Co., under these names. The transfers in question are dated June 26, and July 8, 1873, and were made by way of mortgage to Canadian creditors in consideration of advances to carry on the business and in trust to secure payment of the debts of the firms of A. S. Page & Co. and Page, Mixer & Co., respectively. The property appears by the evidence in both cases to have been worth more than the advances and the debts secured thereby provided the business should be continued, but insufficient for the payment of those debts if the property had been closed out under forced or judicial sale, upon the winding up of the business. The business of White & Co. was that of lumber dealers, and their principal place of business was at Albany. They were also known as the International Lumber Co. The lumber was obtained largely from Canada, and the two firms of A. S. Page & Co. and Page, Mixer and Co. were established the one at Belleville, Ontario, the other at Collingswood, Canada. The three bankrupts, White, Barnard and Page, were members of both these firms, but in each of the firms there was another partner, at least nominally; in the one William Jones, who acted as the managing partner of the firm of A. S. Page & Co., and in the other Harvey M. Mixer, whose name appears in and who was the resident manager of the firm of Page, Mixer & Co. White & Co. also had branches or closely connected auxiliary firms in Chicago and other places, and they became embarrassed on or before May, 1873, some of their paper then going to protest, and their liabilities on their own account and for accommodation of other parties were very large. At the time the transfers in question were made, the creditors of the firms of A. S. Page & Co. and Page, Mixer & Co. were threatening legal proceedings to have the property in question, which was ostensibly the property of those firms in Canada, sequestrated under the laws of that country relating to insolvent debtors, or seized for the payment of their debts, and if this had been done the evidence shows that the depreciation in the value of the property would have been very great from the immediate cessation of the business which would necessarily have followed. The objecting creditors insist that even if the firms of A. S. Page & Co. and Page, Mixer & Co. were distinct firms from White & Co., the property in question was in fact the property of White & Co., and not the property of those firms, and they also insist that inasmuch as Jones and Mixer were paid fixed salaries and did not share in the capital or the profits, they were not partners in those firms respectively, and consequently that those firms were not distinct from White & Co. and that all this property should have gone to all the creditors of White & Co. equally.

I have not found it necessary to determine whether Jones and Mixer as between themselves and White, Barnard and Page were to be considered partners or not, because there is no doubt of the fact that they were held out to the world as partners by White, Barnard and Page, and the firm of White & Co. And the firms of A. S. Page & Co. and Page, Mixer & Co., as separate firms with different partners, were allowed to trade and acquire and hold property, borrow money and incur

debts on the faith of Jones and Mixer being partners, and generally as to their separate creditors were treated as distinct firms with Jones and Mixer as members respectively, and the property in question was suffered to be in their possession and managed by them as their stock in trade and firm property. Therefore, without regard to the question very learnedly discussed at the bar, whether the courts of Canada would give any extra territorial effect to an assignment under the bankrupt law of the United States, so that a title under such an assignment to personal property situated in Canada would be superior to liens afterwards acquired or attempted to be imposed under the laws of Canada, I am satisfied that the circumstances under which those transfers were made were such that they were not preferences within the meaning of the act so as to deprive the bankrupt of his discharge. They were recommended by some of the principal creditors of White & Co., at an informal meeting of their creditors, as the best thing to be done under the circumstances, in view of the claims and threatened action of the Canadian creditors, in the expectation that by the advances secured for carrying on the business in Canada a large surplus would remain for White & Co. or their creditors. In fact the bankrupts simply yielded to what seemed to be a claim on the part of the creditors of A. S. Page & Co. and Page, Mixer & Co. which could not, as they believed, be resisted, and the attempt to resist which would probably have resulted in the entire loss of the property to the creditors of White & Co. On the evidence I think that the transfers were made in good faith, with the purpose and intention of doing what the bankrupts believed at the time to be for the advantage of all concerned, and in the belief that they would thereby avoid bankruptcy, and also in the belief that the transfers might lawfully be made without injury to the legal rights of the creditors of White & Co. In fact the transfers resulted in the creditors of White & Co. realizing about two hundred and fifty thousand dollars out of the surplus remaining after payment of the debts of A. S. Page & Co. and Page, Mixer & Co.

2. The objection that the court has no jurisdiction to grant the discharge, on the ground that a prior petition for discharge had been filed August 4, 1875, which is still pending and undetermined, is not valid. No discharge could have been granted under that petition because not seasonably made. The present petition is filed in accordance with the amendatory act of July 26, 1876. The proceedings under the first petition were abandoned when this petition was filed. An order might have been entered at any time dismissing the former petition. It can now be entered, if desired, nunc pro tunc. The case has been fully tried and heard on the merits under this petition, and the objection is frivolous.

3. The point taken on the argument that Page was a member of other firms, as a partner in which he is indebted, and that said other firms are not in bankruptcy, and that therefore he cannot be discharged because he cannot be discharged from all his debts, is not available to the opposing creditors. The point involves proof of the fact that there are outstanding and unpaid debts of such other firms. Wherever the objection to a discharge rests on facts, there must be a specification, in order that the bankrupt may produce evidence and that there may be a trial of the fact. The case of In re Plumb [Case No. 11,-231] is relied on. The record there shows that the point was raised under a specification duly made and tried. It is said that the schedules filed in this case show such debts of other firms. But the fact may be that those debts were all paid or discharged before the petition for discharge was filed, or before the testimony was taken. The objection resting on a matter of fact, and not being taken by specification, the bankrupt was not called on to take any notice of what may have incidentally appeared, which if the specifications had covered this objection, might have been evidence against him.

4. The only other objection urged is the withdrawal of certain moneys from the agents of White & Co. for the benefit of Page or his firm of Page & Benson. It is enough to say the evidence does not sustain the specifications.

Discharge granted.